## SHEAFE *v.* SHEAFE.

The term alimony, as used in the constitution and statute of this State, means only that provision or allowance which is made to a wife upon a divorce from the bonds of matrimony.

Under sec. 13, chap. 148, Rev. Stat., this court may, after a divorce is granted upon the libel of the husband, make a decree for alimony in favor of the wife out of the property of the husband, even though the decree of divorce be against the wife.

In considering a petition for alimony, after a divorce in favor of the husband, the court may reëxamine the evidence used upon the question of the divorce, and also evidence tending to refute the charges in the libel.

PETITION for alimony. At the December term of this court, 1849, a decree was passed dissolving the bonds of matrimony between William H. Sheafe, the libellant, and his wife Rhoda Sheafe, the libellee and present petitioner, for the alleged crime of adultery. At the next term after the divorce was decreed, the petitioner made this application for alimony.

In support of the application, she introduced evidence showing that her counsel had misapprehended the weight and sufficiency of the libellant's testimony, and had neglected to furnish evidence in defence of the charges set up in the libel, because he believed that a divorce could not be decreed upon the evidence produced by the libellant.

Her evidence further showed gross impropriety of conduct on the part of the libellant towards the libellee, in endeavoring to ensnare her and procure causes of divorce; and tended also to show that she might be innocent of the charges preferred against her; and further, that the libellant himself might perhaps be guilty of the crime of adultery.

Had all of the petitioner's evidence been laid before the court, anterior to the passing of the decree, it is very probable that a divorce would not have been granted.

The evidence also showed that the petitioner had no means of support but her own labor, and that the libellant had an annual income of from four to six hundred dollars, derived chiefly from property held in trust for him in Massachusetts.

Sheafe v. Sheafe.

The evidence satisfied the court that there was no collusion between the parties.

*Hackett*, (with whom were *Stickney* and *Christie*,) for the petitioner. We contend that the evidence presented to the court establishes the fact that seven or eight years ago, and long before he pretends he had any cause of divorce, Sheafe was seeking a divorce from his wife, the petitioner. As early as 1844, finding, upon consultation with counsel, that he could not be divorced, he proposed to his wife to dissolve their connection without the intervention of the court, and gave her a writing, the import of which was that either party might again marry, and requested a similar paper from her, which she refused. This antecedent determination to procure a divorce explains the whole transaction. Sheafe had been for a series of years manufacturing a cause for divorce. If Mrs. Sheafe's counsel misconceived the effect of his evidence, as they assuredly did; and were thereby induced to omit taking testimony on her side, which was in Boston, and which would have been expensive procuring, it may be too late to question the divorce, but she should not be deprived of alimony after she has furnished evidence that she is an injured and probably an innocent woman.

All the evidence is perfectly consistent with the plan of making a cause for a divorce, but entirely inconsistent with any real, honest purpose on the part of Sheafe. Mrs. Sheafe is entitled to have her conduct examined in connection with the fact that her husband was avowedly seeking for a pretext for a divorce, and was five years plotting with this object in view. If it were an open question on the evidence now submitted, we should contend, with undoubting confidence, that no adultery was proved to have been committed on the part of Mrs. Sheafe. And we understand, though we may not question the divorce, that we may explain the conduct of the parties in support of this petition.

If the court shall think that Mrs. Sheafe is not without blame, they will see that she is not without great provocation. Her husband has treated her with cruelty; attempted to persuade

her to commit adultery; offered her money to keep still while he obtained a divorce; offered to release her from her marriage obligations; and has been for years laying plans to obtain circumstantial evidence against her. At last he succeeds against her, and throws her upon the world, in advanced life, in utter destitution, while he enjoys a handsome income.

Mrs. Sheafe is entirely destitute, and has to work in the factory for her support. She has been at large expense in defending herself against the persecutions of her husband, and in prosecuting this application.

*Hatch,* (with whom was *Emery,*) for Wm. H. Sheafe. Upon the statute authorizing the court to make a decree of alimony, this court have resolved, as we understand the law, that the property of the wife or part of it may be restored to her, though she be the guilty party; but we do not understand that the court have ever decided that the property of the husband, after divorce, may be taken from him for the benefit of a guilty wife.

We contend, therefore, that the petition is insufficient upon its face, there being no allegation that the petitioner brought any property whatever to her late husband. It was not the intention of the statute, nor is it consistent with justice, that the husband should be charged out of his own estate with the support of a woman who has been conclusively declared by a decree of this court to be an adulteress. Such a doctrine would operate as a reward for crime.

The two principal allegations in the petition are not supported by the evidence. It is not shown that the petitioner is poor; and it is not shown, nor is it the fact, that Mr. Sheafe is a man of large estate. The question then is this, can Mr. Sheafe be lawfully or justly deprived of the income necessary for his support and that of his family, for the benefit of such a woman as makes this claim?

The argument of the solicitor for the petitioner has several important and fatal defects. It contains statements which are

unsupported by any proof. It attempts to bring again into discussion the merits of the original decree of divorce, which has been acquiesced in for some time without any attempt to disturb it or to procure a re-hearing. If the court think it proper to reëxamine that matter, the defendant desires only to refer to the numerous depositions used in the case originally. But we insist that the judgment of the court on the subject is final. Best on Presumptions of Law & Fact, 68 ; Coke Litt. 103, a.

If subject to reëxamination, it can be allowed only upon an application for a re-hearing of the original case. Its merits cannot be called in question collaterally. If this position of the defendant is sound, and he has relied upon it so confidently that he has taken no evidence on the point, the mass of the testimony by the petitioner becomes irrelevant and inadmissible. These depositions are full of contradictions and discrepancies, which will be observed, if they are read, but which, in the defendant's judgment, it is not necessary to point out.

The whole tenor of the argument for the petitioner consists in the allegation that Mr. Sheafe was for years seeking a divorce from his wife. This is not supported by the testimony, as the court will see upon its perusal.

EASTMAN, J. The term alimony, as used in the constitution and statute of this State, means that provision or allowance which is made to a wife upon a divorce from the bonds of matrimony. It does not embrace other classes of cases, as is sometimes the fact in the English practice. *Parsons* v. *Parsons & al.*, 9 N. H. Rep. 309.

The decision of all causes of divorce and alimony is given to this court by the constitution ; and the statute regulating the whole matter confers upon the court the most ample powers. Constitution of N. H., part 2, § 76 ; Rev. Stat., chap. 148.

The section of the statute which applies particularly to the question before us is as follows : " Upon any decree of nullity or divorce, the court may restore to the wife all or any part of her lands, tenements and hereditaments, and may assign to her such

part of the real and personal estate of her husband, or order him to pay such sum of money, as may be deemed just and expedient; and may compel the husband to disclose under oath the situation of said property, and before or after such decree may make such orders and use such process as may be necessary to carry the same into full effect, and to protect the rights of the wife." Rev. Stat., chap. 148, § 13.

Several other sections are to be found in the same chapter, showing that it was the intention of the Legislature that the court should exercise a very broad discretion in relation to the whole subject; that they should, as was expressed in the act of 1791, do what they may think just and reasonable, " all circumstances duly considered."

It is evident, too, that it was the intention of the legislature that the court should not be governed by strict rules of evidence or practice. Hence in the ninth section it is provided that, " upon any hearing for divorce, the admission of the marriage, by the party against whom the process is instituted, general repute, the fact of cohabitation, or any other circumstantial or · presumptive evidence from which the marriage may be inferred, shall be competent evidence for the consideration of the court."

It is conceded in the argument that this court have, by virtue of the thirteenth section, made orders restoring to the wife her own property brought to the husband by the marriage, even where she is the guilty party and the decree of divorce is against her. And this we think to be entirely correct. It is not too much to suppose that there are those who would enter into the marriage relation solely with the view of possessing themselves of the property of their wives; and who would readily sacrifice their virtue, if by so doing they could break up the marriage contract, and at the same time retain the property of which they had gained possession. Nor is it too much to suppose that a weak-minded woman might become the victim of an artful and unprincipled husband; and yet in such a way that it would be impossible to produce any evidence implicating him in her fall. To cast such a woman destitute upon the world would be doing

the grossest injustice, and at the same time be rewarding the most infamous iniquity.

But if by this section of the statute the court in their discretion have the power to restore to the wife all or any part of her lands, upon a decree of divorce against her, it cannot be doubted that they have, by the language of the section, also, power to assign to her such part of the real and personal estate of her husband, or order him to pay such sum of money as may be deemed just and expedient. And from an examination of the whole chapter, we think that such should be the construction put upon the section; that by it the court have the power, and, upon a proper case shown, should award alimony to the wife out of the property of the husband, even though the decree of divorce is against the wife.

We think, also, that a proper case is here made out. An examination of the evidence satisfies us that the libellant is not to be regarded with much favor in this controversy. We had some hesitancy at first, whether we would consider the evidence tending to refute the truth of the charges in the libel; but upon examining several sections of the chapter upon the subject, and finding it stated in the last section that the court, upon proper application and notice to the adverse party, may revise and modify any order made by such court, and may make such new orders as may be necessary we think it may be considered. If the orders may be revised, the evidence may be re-considered.

This question has been similarly settled in other jurisdictions, although we are aware that in a matter of statutory regulation, authorities are not much to be relied upon. A slight discrepancy in the phraseology may cause a marked difference in the decision. The authorities, however, to which we refer are, *Fulk* v. *Fulk*, 8 Blackford's Rep. 561; *Peirce* v. *Peirce*, 6 B. Monroe's Rep. 496; *Wren* v. *Morse*, 2 Gilman's Rep. 72; and *Bascom* v. *Bascom*, Wright's Rep. 632.

Our opinion, therefore, is, that the prayer of the petition should be granted. The amount that shall be awarded we will consider. It is stated that the property of the libellant is in

Massachusetts.    That cannot be reached directly by any process
from this court; but an execution in favor of the petitioner may
be the foundation of proceedings to compel a payment of what-
ever award we may think proper to make.

*Petition granted.*