## SHEAFE *v.* LAIGHTON.

The Supreme Court may award execution against the person as well as the estate of a husband, who has neglected to pay the alimony decreed to the wife, upon a divorce.

No affidavit is required upon such execution, that the debtor secretes his property, or is about to leave the State to avoid the payment of his debts, because such execution is not founded on contract.

If the husband give bond upon his arrest to take the poor debtor's oath, or surrender himself to prison within a year, his sureties will be liable, if he fails to do the one or the other, though the justices to whom he has applied may have improperly refused to administer the oath.

A poor debtor may be properly required to assign to the creditor his right to a life annuity, before he is admitted to take the poor debtor's oath.

DEBT ON BOND. The parties agree that the plaintiff was formerly the wife of W. H. Sheafe. He applied for a divorce

Sheafe v. Laighton.

from her, for adultery, and a divorce was granted in 1849 by the Superior Court. Afterward she applied to the same court for alimony, and such proceedings were had that at the July term of said court, in 1852, the said W. H. Sheafe was decreed to pay her, as alimony, one hundred and fifty dollars a year. Said alimony being unpaid, the plaintiff applied to said court, at July term, 1855, by her petition, setting forth said divorce and decree of alimony ; averring that four several payments, of one hundred and fifty dollars each, had become due and payable to her; yet said W. H. Sheafe had not paid the same, or any part thereof, though specially requested so to do; but neglected and refused to pay the same ; and praying for a writ of attachment, execution, or other process, to compel him to pay. An order of notice was issued in usual form, and duly served, and the parties appeared ; and the facts being admitted, an execution was awarded in favor of the plaintiff, against said W. H. Sheafe, for $450 debt, and costs, $12.24, to run against the property and person of said. W. H. Sheafe ; and on the 27th of August, 1855, execution issued against said W. H. Sheafe, his person and estate, in the usual form of such executions. On the 28th of August he was arrested and detained till he gave bond to said plaintiff, with sureties in the sum of $1000, with a condition, in the form prescribed by statute, namely, that said W. H. shall, within one year from the date hereof, apply to the proper authority, and be admitted to take, and shall actually take, the oath or affirmation prescribed by law for the relief of poor debtors ; or in default thereof shall surrender himself to prison, as prescribed by law. On this bond one L. Sheafe and the defendant were sureties. No affidavit of the plaintiff, or any person for her, that said W. H. concealed his property, or was about to leave the State to avoid payment of his debts, was made to said court, or on said execution. Upon giving this bond said W. H. was released from arrest by the officer.

He afterwards, within one year, applied to two justices of the peace and quorum, to be admitted to take the oath for the relief of poor debtors, and due notice was given to the plaintiff, and

several hearings had before said justices. On his examination it appeared that C. C. Paine held a considerable amount of property, as trustee under the provisions of the will of Elizabeth Doane, but that said property, being principally invested in railroad stocks, had of late produced little or no income. It also appeared that said W. H. was heir to certain real estate in Portsmouth, of which he had made conveyances, alleged by the plaintiff to be fraudulent. By the will of Mrs. Doane she gave to W. C. Aylwin and C. C. Paine, and the survivor of them, all her property, in trust, to invest the same, &c., and on receipt of the interest or income thereof, to pay the same to her nephew, W. H. Sheafe, half yearly, or oftener if convenient, with remainder after his death to his widow or children.

The plaintiff, who was present at the examination, with her attorney, objected to the taking the oath by said W. H., until he should have assigned all his interest in said trust property, and in said real estate, to her, at an appraisal to be made thereof by said justices. And the justices thereupon refused to administer said oath, until such conveyance should be made. But said W. H. did not make such conveyance, alleging that he was not bound to do it. All this was done before the expiration of one year from the date of the bond. Said W. H. did not in fact ever take said oath, or surrender himself to prison. The court to render such judgment upon this statement as the law requires.

*S. H. Goodall,* for the plaintiff.

*A. R. Hatch,* for the defendant.

Bell, J. The powers of the court in relation to the alimony of the wife in cases of divorce, are very broad. They are not in any way restricted by the position of the wife, as libellant or libellee.

" Upon any decree of nullity or divorce, the court may restore to the wife all or any part of her lands, tenements and hereditaments, and may assign to her such part of the real and personal

estate of her husband, or order him to pay such sum of money, as may be deemed just and expedient. Rev. Stat., ch. 148, sec. 13; *Whittier* v. *Whittier*, 11 Foster (31 N. H.) 452.

The ordinary course is to allow alimony to the wife, where she is the injured party, and the libellant, but the power of the court is not limited to that case. The wife may be in the wrong. She may have an unhappy temper, or an unfortunate disposition; she may have ill-treated her husband, or deserted him, or have otherwise misconducted herself, and yet the property she may ask as alimony may be all such as was her own before her marriage, or such as has been accumulated, in whole or in part, by her own industry; and her fault may be far from such as ought to be punished by the forfeiture of all her property, or her interest in the husband's property, thus leaving her to beg or starve. She may have so conducted that her husband may be well entitled to a divorce, and yet she may be a wronged and injured woman; and there seems, therefore, to be good reason why the court should be vested with the power of making to her a just and reasonable allowance in any such case. This question was carefully considered in this case, when the original decree for alimony was made to the present plaintiff in this case; *Sheafe* v. *Sheafe*, 4 Foster (24 N. H.) 564; and nothing has been since suggested which leads any of us to doubt the correctness of the conclusion of the Superior Court upon the point.

The decree for alimony is not required to make part of the decree of divorce, though it is the usual course to include the prayer for alimony, for the custody of children, and the like, in the libel for divorce; but the practice is well settled that this is not necessary, and that further petitions may be presented for these purposes, at any time after the libel for the divorce is filed, and by either party, as the case may require.

The orders and decrees of the court upon any of these matters may be revised, and new orders made. The 16th section confers this power in the most explicit terms. "The court, upon proper application and notice to the adverse party, may revise and modify any order made by such court, and may make

such new orders as may be necessary, and may award costs, as justice may require."

And by the 13th section the court "may, *before or after the decree,* make such orders and use such process as may be necessary to carry the same into full effect."

In the present case it appears that the divorce was granted upon the libel of the husband, for the alleged adultery of the wife. At a subsequent term alimony was decreed to her, at the rate of $150 a year; and we are well satisfied, as indeed we are bound to presume, that the allowance of alimony was not made but upon allegations and proof that were entirely conclusive, as to the propriety of the allowance and the reasonableness of the amount.

By the application which was subsequently made, and which forms part of this case, it was alleged that, although demanded, this alimony was unpaid, and proper process was sought to enforce the payment; and after notice and an appearance, an execution for the amount then due was awarded against the person and estate of the husband. Of the power of the court to make this order there can be no doubt, and we entertain none of the propriety of its exercise.

In pursuance of this award the execution stated in the case was issued in the usual form prescribed by law in cases of executions against the person, and W. H. Sheafe was arrested upon it, and gave the bond here in suit, conformably to the statute.

The action is brought by the plaintiff against this defendant, as one of the obligors in this bond. Its condition was to take the poor debtor's oath within a year, or surrender himself to prison, as prescribed by law. By the case it appears he has done neither, and of course the condition of the bond is broken, and the defendant liable, unless some objection is shown, to prevent our arriving at this conclusion.

Two points seem to be made to negative the defendant's liability:

1. That no affidavit of the plaintiff, or any person for her, was made to the court, or on the execution, that said W. H. Sheafe

concealed his property, or was about to leave the State, to avoid the payment of his debts.

The answer to this point is, that no law required such affidavit. The statute of 1843, ch. 35, (Comp. Stat. 477) required such an affidavit on the back of any writ or execution, founded on contract, before an arrest could be made upon it; but this was not an execution founded on contract in any sense, and nothing could be clearer than that this statute has no application to a case of this kind.

2. Another position is taken, that W. H. Sheafe was required by the magistrates to whom he applied to take the poor debtor's oath, to assign to the plaintiff all his interest in certain trust property, stated in the case, of which he was entitled to the income for life, and in certain real estate in Portsmouth, of which it was alleged he had made certain merely colorable conveyances. He claims that he was not bound by law to make these assignments. But the statute seems to us clearly to require that such an assignment should be made, before the oath could be administered; and the refusal of the justices to admit him to take the oath, upon his declining to make the assignment, was correct and proper.

If W. H. had no assignable interest in either of these parcels of property, it was an act of great folly in him to refuse to make an assignment, when the justices, from error, or mistake as to the law or the facts, required him to do it. He could not be prejudiced by such an instrument, which would be merely inoperative. The language of the statute was designed to require an assignment, not only where the party had an assignable interest, but in all cases where it was alleged that he had any property not exempted by law.

" If it shall appear, *or shall be alleged*, that the person applying had any property at the time of his commitment, over and above the property exempted by law, his interest in the same may be by him assigned to the creditor, at the discretion and appraisement of the justices, in case the parties do not agree;

and on his refusal or neglect forthwith to make such assignment, his application shall be refused."

The duty to require the assignment does not depend on the fact that the debtor has an assignable interest, nor on the question, what, if any, will be the effect of the assignment.

But if the justices had acted improperly in refusing to administer the oath, it would make no difference in this case. The condition of the bond was, that he would apply, and be admitted to take, and would actually take the oath, or surrender himself to prison. The obligors took upon themselves the obligation that one or the other of these things should be done, and one or the other was clearly in their power to do, and the condition was broken by their failure to do it.

Judgment must consequently be rendered against the defendant for the amount of the execution, including the costs and interest, and for the costs of this suit.