## *Adams *v.* Adams.

Courts have power to set aside or vacate decrees of divorce for fraud or imposition, as in the case of other judgments, and will exercise that power where such fraud or imposition is clearly established.

This was a motion by Melinda Adams to set aside a decree of divorce granted in this county (Hillsborough), December term, 1864.

The libellee offered to show that the divorce was obtained without notice to her, and by fraud and perjury ; that the libellant, George W. Adams, knew her residence at the time, and caused the order of notice to be published in a newspaper that he had every reason to believe neither she nor her friends would see, for the purpose of concealing from her any notice of the proceedings ; that this motion was made at the first term of court after she was informed that the divorce had been granted.

The libellee also offered to prove that the libellant had not remarried since the decree of divorce was granted.

---

* Decided June term, 1872.            Reporter.

The court, *pro forma*, ruled that the evidence was not competent, and could not be considered ; to which the libellee excepted.

The case was reserved.

*Geo. Y. Sawyer & Sawyer, Jr.*, and *Isaac W. Smith*, for the libellant.

The decree of divorce in this case at the December term, 1864, is a judgment as conclusive between the parties as a common law judgment. It determined the *status* of the parties as to their matrimonial relations, and judicially declared them to be no longer husband and wife. It is now sought, after the lapse of seven years, to obtain a rehearing for the purpose of having their *status* during these seven years, and now, judicially declared to be that of persons married to each other instead of divorced from each other. No rule or principle of law authorizes such a rehearing subsequent to the term of court at which the cause was finally adjudicated.

The court had jurisdiction of the cause and of the parties. The proceedings in a case for divorce are in the nature of proceedings *in rem*—Bishop on Marriage and Divorce, sec. 701—and the publication of notice under the statute, where the cause is within the jurisdiction of the court, gives jurisdiction of the parties as effectually as personal notice. Gen. Stats., ch. 163, sec. 5, p. 335. The maxim, that fraud vitiates judgments as well as other proceedings, and may vitiate a judgment *in rem* as well as one *in personam*, is not questioned, but the maxim applies only in cases where proof of the fraud is admissible. When the matter in issue has become *res adjudicata*, a party to the proceeding is estopped to set up fraud, because as to him the judgment is conclusive and cannot be controverted. It is only third persons—strangers to the judgment—who can impeach it on the ground of fraud, because they have no other mode of availing themselves of this answer to it. In *Prudam* v. *Phillips*, Hargrave's Law Tracts 456, *note*, Ld. Ch. J. WILLES says,—" Fraud used in obtaining a judgment is a deceit upon the court and hurtful to strangers, who, as they cannot come into court to reverse or set aside a judgment, must of necessity be admitted to aver it was fraudulent. But who ever knew a defendant to plead that a judgment obtained against him was fraudulent ? " Under the laws of this State, certain classes of judgments may be revised upon proper proceedings by appeal, writ of error, *certiorari*, review, and the like, and there is no occasion for us to deny that in the case of judgments, involving only a determination of the rights of the contesting parties to the subject-matter of the litigation or affecting private interests only, they may be set aside for fraud in obtaining them without resort to the recognized forms of proceedings for revising them.

It is clear that a suit for divorce is one deeply affecting public interests. Bishop calls it a triangular action *sui generis*, in which the government or society is one party, and the libellant and libellee the others, the interest of society being, first, to protect the rights of persons not before the court, but liable to be affected by the decree; secondly, to

conserve the public morals; and thirdly and chiefly, to see that the *status* of the citizens who are parties to the record, and sometimes their children, be properly determined.    Marriage and Divorce, sec. 300.

We respectfully submit that considerations of public policy forbid that a decree of divorce determining the *status* of the parties, and thereby pronouncing judicially beforehand upon the legality of a subsequent marriage, the legitimacy of children, the inheritance of estates, and the right of dower, should be made the unstable and fluctuating thing it would become by a subsequent decree of reversal, judicially undoing what had before been judicially done, and thereby introducing mischiefs infinitely greater than all that fraud and falsehood in any case of divorce can occasion.

In the case of *Greene* v. *Greene*, 2 Gray 361, application was made to the court to set aside and annul a decree of divorce granted at the next preceding term, on the ground that the decree was obtained by the fraud and false testimony of the libellant.    In an elaborate opinion, delivered by Ch. J. SHAW, it was held that the decree in its nature is such that it must be conclusive upon the parties, notwithstanding the fraud and falsehood, on the ground that the consequences of holding the opposite doctrine would be such as to render it contrary to sound public policy.    In considering the case as one to be decided upon grounds of public policy, the learned chief justice says,—" If the decree is reversed, it must be for a cause which shows that it ought not to have been rendered; the reversal relates back, and declares the decree void *ab initio*, and that the parties have never ceased to be husband and wife.    *    *    *    On such new hearing, the wife may bring new evidence to show that the evidence on which the decree was rendered was false.    *    *    *    We see nothing to prevent the husband from bringing a third suit to reverse the decree of reversal, on a suggestion and offer of proof that the decree of reversal was obtained by perjury, subornation of perjury, and other fraud, and thus reverse the second decree and reinstate the original decree of divorce."

The same doctrine was held in the case of *Parish* v. *Parish*, 9 Ohio St. 534—a case of the same impression as *Greene* v. *Greene*, and as the case at bar.    It is true, as suggested in the brief of the libellee, that by the Ohio statute no " appeal " could be taken from the decree of the court of common pleas granting the divorce.    But in the argument of the cause by able counsel, and in the opinion of the court delivered by Judge PECK, and in which the whole court concurred, no reference was made to the statute except in the statement by the learned judge that the statutory provision was nothing more than a legislative recognition of the rule of public policy, that a judgment or decree, which affects directly the *status* of married persons by sundering the marriage tie and thereby ennabling the parties to form new marriage relations with other and innocent persons, should never be reopened.    In considering the case on this ground of public policy, the provision of the statute was wholly laid aside; and in the opinion as delivered by Judge PECK, and in that of Ch. J. SHAW, in *Greene* v. *Greene*, the reasons upon which

this rule of public policy is founded are fully presented; and in both opinions the authorities bearing upon the question, many of which are cited in the brief for the libellee, are carefully examined, and held not to conflict with the positions there taken. Most of the cases supposed to have a contrary bearing, it is said by Ch. J. SHAW, are those where the legality of a particular marriage has been drawn in question in a suit between third parties. Such are the cases of the *Duchess of Kingston; Allen* v. *Maclellan*, 12 Penn. St. (2 Jones) 328. Others are cases where the legality of a divorce in the courts of one State is questioned in those of another on the ground of fraud, as *Vischer* v. *Vischer*, 12 Barb. 640; *Leith* v. *Leith*, 39 N. H. 45; and in all such cases the maxim that fraud vitiates the judgment is applicable. In the language of Judge PECK, " it is difficult to see how " such cases " decide that a court has power to annul its own decrees entered at a previous term. The decree in New York does not attempt to annul the decree in Michigan, but merely disregards it. Again, though there was not any actual service upon the libellee in this case, and though for that cause it might be disregarded in New York, still the Ohio court had jurisdiction of the subject-matter and of the parties, of the one by his appearance and of the other by publication in a newspaper, which under the statute is as effective in conferring jurisdiction as actual service. The courts of New York might for this cause hold the decree void, but the Ohio courts must regard our common pleas in the original divorce suit as having acquired jurisdiction over persons as well as subject-matter. Sound policy therefore forbids us from setting aside a decree of divorce *a vinculo*, though obtained by fraud and false testimony."

We respectfully refer the court to these able opinions of two of the eminent jurists of the country, delivered in pronouncing the judgment of two courts of the greatest weight of authority, as furnishing a conclusive argument upon the questions which this case presents.

We are aware that the counsel for the libellee flippantly characterizes this well considered opinion of Judge PECK'S as "an attempt to apologize for the legislature of Ohio for their *immoral* statute," in which attempt he finds consolation in being backed up by Ch. J. SHAW. With quite as much truth, if not with equal flippancy, the counsel asserts that *Greene* v. *Greene* is based upon the decision in *Homer* v. *Fish*, and that, after a careful examination by the counsel of the authorities cited in the latter case, he does not hesitate to say no one of them sustains the doctrine of *Greene* v. *Greene*.

It was not often in the judicial life of Judge SHAW that he committed such a blunder!

*Lord & Sulloway*, for the libellee.

The court erred in excluding the evidence offered.

Since the decision in *Fermor's case*, 3 Coke 77, "which was decided by all the judges of England and the barons of the exchequer, in which they held that the common law doth so abhor fraud and covin that all acts,

as well judicial as others, which of themselves are just and lawful, yet being mixed with fraud and deceit are made null and void," and that "fraud is an extrinsic, collateral act, which vitiates the most solemn proceedings of courts of justice," it has never, so far as we have been able to ascertain from the authorities, been seriously contended that a party can avail himself of a judgment at law or in equity, which he obtained by fraud and perjury. In *Bury's case*, 5 Coke 98, a divorce was granted for alleged impotency. He afterwards married and had children by the second marriage. A motion was made to annul the decree, upon the ground that he obtained the decree *fraudulently*, by imposing upon the church, and that the church was deceived by his fraudulent representations, and the decree was declared null.

In *Welde* v. *Welde*, 2 Lee 580–586, it was held that if parties have been divorced on the ground of impotency, and both subsequently remarried and had children by the second marriage, that the decree of divorce must be annulled and the second marriage set aside, and the first marriage declared valid; for whenever it appears that the church has been imposed upon and deceived, every sentence made by reason of such imposition and deceit may be revoked. See, also, *Kenn's case*, 7 Coke 42.

It was stated by Dr. Calvert, in the *Duchess of Kingston's case*, and accepted by all the parties as the law, that "there can be no determination against a marriage but what is open to future litigation." Said he,—" In most other questions, as of property, a person might be bound by time, bound by not making so good a case as he should have done ; but as a person cannot release himself from the obligations of marriage by any lapse of time or any neglect in stating his case, the question is ever open." Cited and approved by Mr. Bishop, in vol. 2, sec. 748, Mar. and Div.

As a general proposition, the American tribunals, when unencumbered by specific statutory directions, have been governed by substantially the same principles in divorce cases as in others, in respect to opening decrees or granting rehearings, writs of error, *certiorari*, or otherwise, according to the practice of the court. 2 Bishop on Mar. and Div., sec. 751.

Any adjudication, whether in a suit of jactitation, or of nullity, or of divorce, in order to have conclusive effect, must have been obtained *bona fide*, without fraud or collusion between the parties; for fraud in these cases, as in all others, *vitiates every judgment* into which it enters. 2 Bishop on Mar. and Div., sec. 760 ; Story on Conflict of Laws, sec. 597, and cases cited ; Harg. Law Tracts 479 ; *Harding* v. *Alden*, 9 Greenl. 140, 151 ; *Hake* v. *Fink*, 9 Watts 336 ; *Jackson* v. *Jackson*, 1 Johns. 424 ; 2 Bishop on Mar. and Div., sec. 752 ; *Duchess of Kingston's case*, 20 Howell St. Tr. 355 ; 2 Smith's Lead. Cases 424 or 426 ; Shelford on Mar. and Div. 493, 583 ; *Harrison* v. *Southampton*, 17 Eng. Law and Eq. 364 ; 21 Eng. Law and Eq. 343.

In *Allen* v. *Maclellan*, 2 Jones (Penn. St.) 328, GIBSON, C. J., said,— " This court has power to vacate a decree of divorce entered at a pre-

vious term, when it was obtained by fraud on the court, although a marriage had been contracted subsequently on the faith of such decree with a party thereto, and issue born." *Prudam* v. *Phillips*, stated in *Meadows* v. *The Duchess of Kingston*, Amb. 763 ; 1 Harg. Tracts 526, note ; *Harrison* v. *Harrison*, 19 Ala. 499. *Colvin* v. *Colvin*, 2 Paige 385, was a case where a decree of divorce had been regularly made for the alleged cause of adultery. After the decree had been made the libellant became satisfied of the libellee's innocence, and a new hearing was granted and the decree annulled.

If a tribunal has been imposed upon, the fraud being of such a nature as to make the judgment of divorce void, it will vacate the judgment when made cognizant of the fraud. 2 Bishop on Mar. and Div., sec. 753.

A sentence or decree obtained by fraud is no sentence or decree. In order to make a sentence or decree there must be a real interest, a real argument, a real prosecution, a real defence, a real decision. Of all these requisites, not one takes place in the case of a fraudulent or collusive suit. There is no judge, but a person invested with the ensigns of a judicial office is misemployed in listening to a fictitious case proposed to him. There is no party litigating, no party defendant, no real interest brought into question. 2 Bishop on Mar. and Div., sec. 761 ; *Meddowcroft* v. *Huguenin*, 4 E. F. Moore 386 ; *Perry* v. *Meddowcroft*, 10 Beav. 122 ; *Allen* v. *Maclellan*, 2 Jones (Pa. St.) 328 ; *Harrison* v. *Harrison*, 19 Ala. 499 ; *Vischer* v. *Vischer*, 12 Barb. 640 ; *Hake* v. *Fink*, 9 Watts, GIBSON, C. J. ; *Grumon* v. *Raymond*, 1 Conn. 40, 45, by REEVE, C. J.

In this case the court had no jurisdiction ; no process was served upon or notice given to the wife, except by publication. The case finds that the libellant knew the residence of the libellee. The court made the order for publication of notice upon the false statement of the libellant. If he had informed the court that he knew the residence of the libellee, the order would have been made for personal service. It was fraudulent for him to suppress and misstate the fact, and perjury to swear that he did not know her residence. Would either or both of these give the court jurisdiction, and deprive an innocent third party of any rights whatever ? The libellee is clearly in the position of an innocent third party, who is to be deprived of her rights without the privilege of being heard. Can any one be deprived of the most sacred and the holiest relation of life, in this manner, in a court of *equity ?*

We had supposed it a sound principle of law as well as of natural justice, that no person should be barred by a judgment without an opportunity to be heard ; and the rule is particularly applicable in cases of divorce. To hold otherwise would be a libel upon the administration of justice. *Jackson* v. *Jackson*, 1 Johns. 432, and cases cited ; *Borden* v. *Fitch*, 15 Johns. 121 ; *Bradshaw* v. *Heath*, 13 Wend. 407 ; *Vischer* v. *Vischer*, 12 Barb. 640 ; *Allen* v. *Maclellan*, 2 Jones (Pa. St.) 328 ; *Conway* v. *Beazley*, 3 Hagg. 639—5 Eng. Ec. R. 242, 244, 245 ; 1 Greenl. Ev., secs. 541 and 546 ; *Harrison* v. *Harrison*, 19 Ala. 499. 2 Bishop on Mar.

and Div., sec. 762, and cases there cited, are exactly in point, where it is held that the publication of notice under the same state of facts that exist in this case was an *imposition upon the court*, and the judgment or decree was declared void.   *State* v. *Little*, 1 N. H. 259.

In the case of *Demeritt* v. *Lyford*, 27 N. H. 548, it was held that "any fact may be alleged or proved which goes to take away the jurisdiction, and if apparent jurisdiction has been conferred by fraud or collusion, the judgment may be impeached on that ground." This is reaffirmed in *Tebbetts* v. *Tilton*, 31 N. H. 289, by BELL, J.

Where the person who has obtained a judgment by fraud attempts to avail himself of the act so as to discharge himself from a previously existing obligation, or to acquire a benefit, the judgment thus obtained is declared void.   *Ammidon* v. *Smith*, 1 Wheat. 447.  Whatever is done in fraud of a law is done in violation of it.   *The William King*, 2 Wheat. 148.

We have found but two cases where it is held that a decree of divorce obtained by fraud and perjury cannot be set aside or annulled.   The first is *Parish* v. *Parish*, 9 Ohio St. 534.   In this case it was held that, under the Ohio statute of March 14, 1843, conferring jurisdiction in divorce cases upon the courts of common pleas, which was in force when the proceedings were had, and which provides that "no appeal shall be obtained from the decree, but the same shall be final and conclusive" no matter what frauds were perpetrated, the court could not or would not interfere to disturb the decree.   The opinion of the court in this case is, as it seems to us, at most but an attempt to apologize in behalf of the legislature for enacting such an immoral statute,—and finds some consolation in citing the case of *Greene* v. *Greene*, 2 Gray 361, where the same doctrine is held.   The decision is based upon a construction of the statute referred to—excepting *Greene* v. *Greene*—and Judge SHAW is complimented for taking the same view of the question that the Ohio legislature did.   The case of *Greene* v. *Greene*, 2 Gray 361, is based upon the decision in *Homer* v. *Fish*, 1 Pick. 435 ; and after a careful examination of the authorities cited in *Homer* v. *Fish*, we do not hesitate to say that no one of them sustains the doctrine laid down in *Greene* v. *Greene*.   But, fortunately for us, the pernicious doctrine laid down in *Homer* v. *Fish* has been rejected by our court.   In *Tebbetts* v. *Tilton*, 31 N. H. 287, BELL, J., says,—"We are aware that the idea is suggested in some modern treatises, as well as in some modern cases, that fraud cannot be shown to impeach a judgment by any party to the suit, or by any person who is privy to either of the parties." "This is clearly true as to the party who desires to avoid a judgment, by showing that he was himself a party to the fraud."   "Such was the case of ***Homer* v. *Fish*, 1 Pick. 435, and others, in which the doctrine is broadly laid down as applicable to all fraud.  But when it is extended so far as to apply to the sufferer as well as to the actor in the fraud, we are unable to assent to it."   "And we are under the impression that there is abundance of authority to prove that fraud in a judgment may be shown by a party or a privy, where it may be done without showing any partici-

pation in the fraud ;" and cites the language of Judge STORY, in *Brad-street* v. *Neptune Insurance Co.*, 3 Sumner 600, as follows : " I know of no case where fraud, if established by competent proofs, is not sufficient to overthrow any judgment or decree, however solemn may be its form and promulgation ;" and cites twenty-five adjudicated cases and text-books where it is thus laid down and settled.

But the case of *Greene* v. *Greene* is not an authority against us. Judge SHAW says,—" When the court has jurisdiction of the subject-matter and of the parties, when both parties are domiciled in Massachusetts, and the respondent actually appears and defends ; or, when it appears to the court that the adverse party has been so legally summoned [which was not done in this case] as to be held legally in default if he does not appear, and a decree is passed dissolving the bond of matrimony, and no appeal, exception, or other step is taken to avoid the final judgment, we think it must in its nature be conclusive upon the parties "—page 362. On page 364 he says,—"We think the point is settled here by authority, not specifically in regard to divorces, but generally as to the conclusive effect of a judgment, in cases arising afterwards on the same matter between the same parties." This explodes the idea of a decree in a divorce case being any more sacred than any other judgment obtained by fraud.

The principle of the common law is well settled in this State,that fraud vitiates everything — contracts, obligations, deeds of conveyance, and even the records and judgments of courts, incontrovertible as they are on every other ground. *Hoitt* v. *Holcomb*, 23 N. H. 554.

It is also well settled that if a judgment be rendered by accident or mistake, or through fraud, or any fact exists which proves it to be against conscience to execute the judgment, of which the injured party might have availed himself at law, but was prevented by fraud, accident, or mistake, unmixed with any fraud or negligence of himself or his agent, a court of equity will interfere and relieve the innocent party. *Fraud will vitiate any judgment*, and a court of equity will declare it a nullity. Equity has so great an abhorrence of fraud that it will set aside its own decrees if founded thereupon. *Wingate* v. *Haywood*, 40 N. H. 437 ; *Manufacturing Co.* v. *Worster*, 45 N. H. 111 ; *Page* v. *Jewett*, 46 N. H. 441.

The conclusive character of a judgment in a decree of divorce rests upon the fact of an investigation and inquiry into the merits of the subject-matter by a court of competent jurisdiction, or upon a concession of the merits by the party having adverse interests, who has an opportunity to be heard. A decree of divorce obtained by fraud and perjury must be held to be a nullity in this State. SAWYER, J., *Leith* v. *Leith*, 39 N. H. 45.

*Lord & Sulloway*, *Morrison & Stanley*, and *B. P. Cilley*, on the same side.

We desire to call the attention of the court to some additional

authorities: *Kerr* v. *Kerr*, 41 N. Y. (Court of Appeals), is a case in point. *Johnson* v. *Coleman*, 23 Wis. 452, is a case exactly in point; and it was held in this case that "equity will annul, at the suit of the wife, a judgment of divorce where an order *for publication of the summons* was obtained on the ground that the husband was unable to ascertain her residence, whereas, in fact, he well knew it, and the summons was not served upon her personally, and she had no knowledge thereof until the time for appealing had expired, and until after her husband's death." In this case the decree was annulled after the husband's death, the court holding that the former proceedings were a fraud upon the court and the wife.

In our brief already filed, we called the attention of the court to the case of *Greene* v. *Greene*, 2 Gray 361, and stated that Judge SHAW based his decision upon the case of *Homer* v. *Fish*, 1 Pick. 435, and that the cases there cited did not sustain the doctrine of *Greene* v. *Greene*, and that our court had repudiated the doctrine of *Homer* v. *Fish* in an opinion by Ch. J. BELL, in *Tebbetts* v. *Tilton*, 31 N. H. 287. We did not call attention to the fact that the same court that gave us the doctrine of *Greene* v. *Greene* immediately after repudiated and overruled it in the case of *Edson* v. *Edson*, not yet reported, but cited in Bennett & Holland's Mass. Digest, vol. 3, p. 290.

From this fact it is possible that the supreme court of Massachusetts took the same view of the opinion of Judge SHAW in *Greene* v. *Greene* that the learned counsel for the libellant did in the closing line of his brief where he says,—"It was not often in the judicial life of Judge SHAW that he committed such a blunder." And, borrowing from the brief of the learned counsel, we may very well say that it is not often that counsel submit an argument with such "flippancy," based upon a decision so long since overruled.

BELLOWS, C. J. As a general proposition, courts have power to set aside, vacate, modify, or amend their judgments for good cause shown. *Judge of Probate* v. *Webster*, 46 N. H. 518; *Bellows* v. *Stone*, 14 N. H. 203; *Frink* v. *Frink*, 43 N. H. 508; *Wiggin* v. *Veasey*, 43 N. H. 513, and cases cited; and *Chamberlain* v. *Crane*, 4 N. H. 115.

In this respect decrees in divorce suits stand upon the same footing as other judgments, both upon principle and authority. Bishop, in his work on Marriage and Divorce, 1st ed., sec. 697, lays it down as a general proposition, that the American tribunals, when unincumbered by specific statutory directions, have been governed by substantially the same principles in divorce causes as in others, in respect to opening decrees, or granting rehearings, writs of error, or *certiorari*, or otherwise, according to the practice of the court, reëxamining the question, except that there has always been a manifest reluctance to disturb a final judgment of divorce, especially after a second marriage involving the interests of third persons; for which he cites authorities from Ohio, New York, Kentucky, and Delaware. So is 1 Phillipps' Ev. 341.

The same doctrine is laid down in a later edition by the same author. 2 Bishop on Mar. and Div., sec. 751.

It is equally well settled that judgments may be set aside or vacated when procured by fraud, but not on the application of a person who is himself a party to the fraud, nor will the judgment be avoided for fraud when the same question of fraud was tried in the original action. This doctrine is fully sustained by the case of *Tebbetts* v. *Tilton*, 31 N. H. 287, and cases cited; and in that case the subject was carefully considered.

So it is well settled that a judgment may be vacated, or the record of it amended, on the ground that it was entered up by mistake—*Bellows* v. *Stone*, 14 N. H. 203; and in this case the application to set it aside was made more than eleven years after the judgment was rendered. This was a bill in equity; and although it was held that courts of equity will set aside judgments at law when obtained by fraud, it would not do so for any error in the proceedings, but leave the party to his petition in the court of law. *Chamberlain* v. *Crane*, 4 N. H. 115, *Wiggin* v. *Veasey*, 43 N. H. 313, and *Frink* v. *Frink*, ib. 508, are cases where mistakes in entering up judgments were corrected many years after the judgments were rendered.

Much more should judgments be corrected or vacated when they have been obtained by the fraud of one party, and the other is in no way implicated in it. The authorities indeed to this point are numerous and quite satisfactory in other jurisdictions. Among them are *Fermor's case*, 3 Co. 77, 78, *a;* Story on Con. of Laws, sec. 597; Starkie's Ev., pt. 2, secs. 77 and 83; *Duchess of Kingston's case*, 11 State Trials 261; 1 Phillipps' Ev. 341; 2 Kent's Com. 655. In *Fermor's case* it is laid down that the law so abhors fraud and covin that all acts, as well judicial as others, and which of themselves are just and lawful, yet, being mixed with fraud and deceit, are in judgment of law wrongful and unlawful.

In *Bradstreet* v. *Neptune Ins. Co.*, 3 Sumner 600, STORY, J., p. 604, says, —" I know of no case where fraud, if established by competent proofs, is not sufficient to overthrow any judgment or decree, however solemn may be its form and promulgation." The case there was a decree of a foreign court *in rem*, which in general was held to be conclusive. So in *Harding & Wife* v. *Alden*, 9 Greenl. 151, the general doctrine is recognized that "fraud and collusion, when pleaded and verified, vacate all judgments and decrees." So is Broom's Legal Maxims *254, and cases cited.

As to the mode of avoiding a judgment or decree obtained by fraud, there is some diversity in the decisions, although it is generally held that such judgment or decree cannot be collaterally attacked by either party to it, but can be avoided only by proceedings instituted directly for that purpose. In some cases, however, a bill in equity to restrain the enforcement of such judgment or decree has been sustained, as in *Huggins* v. *King*, 3 Barb. S. C. 616, where a party had a good defence to a suit at law, but was prevented setting it up by the gross fraud of the plaintiff and others.

A similar doctrine was held in this State, in *Hibbard* v. *Eastman*, 47 N. H. 507, and cases cited; so is 2 Kent's Com. 655, and so is *Vanmeter* v. *Jones*, 2 Green N. J. Ch. 520. These cases clearly recognize the doctrine that the party, injured by a judgment obtained by fraud, may in some form avoid the effect of it. The general doctrine is also recognized in *Great Falls Manf'g Co.* v. *Worster*, 45 N. H. 110.

It has been said that neither a party to a judgment nor a privy can impeach it for fraud—3 Cow. & Hill's Phillipps' Ev., note 610; but this doctrine was considered in *Tebbetts* v. *Tilton*, 31 N. H. 287, and repudiated, and for reasons that are entirely satisfactory to us. If the position had been taken that such judgment could not be collaterally impeached by a party or privy, it would be supported by the authorities; and from the reference in the note to *Davy* v. *Haddon*, 3 Douglass 310, and the notes to that case which hold that a party must apply to the tribunal which rendered the judgment to vacate it, it is not certain that anything more was meant by the learned editors.

This doctrine, in regard to impeaching judgments and decrees for fraud, has been applied in numerous cases to decrees in divorce suits and suits for nullity of marriage, and the weight of authority is greatly in favor of such application. Upon principle, there is no solid ground for any distinction between decrees in divorce suits and other judgments; or if there by any, it is to be found in the much greater danger of fraud and imposition in divorce cases, as compared with others; thus adding largely to the necessity and importance of preserving the power to correct or vacate decrees that have been obtained by fraud and imposition. Accordingly it is laid down, in Bishop on Mar. and Div., sec. 699, that if a tribunal has been imposed upon, and in consequence of the fraud a judgment of divorce has been wrongfully rendered, it may vacate this judgment, when, upon a summary proceeding, it is made cognizant of the fraud;—and see *ibid*, sec. 706, note 4, and cases cited, and also *ibid* 697. This is the doctrine of *Allen* v. *Maclellan*, 12 Penn. St. 328 (2 Jones), and of *Dunn* v. *Dunn*, 4 Paige Ch. 425.

In Story on Conflict of Laws, sec. 597, it is said, speaking of foreign sentences of divorce, that "fraud in this, as in other cases, will vitiate any judgment, however well founded in point of jurisdiction. So is 2 Kent's Com. *109. So in *Roach* v. *Garvan*, 1 Ves. Sen. 157, and *Brownsword* v. *Edwards*, 2 Ves. Sen. 243–246, it is held that a sentence in divorce cases may be impeached for fraud. So in *Harrison* v. *South Hampton*, 17 Law & Eq. 364, it was distinctly held that a sentence of an ecclesiastical court, pronouncing a marriage to be a nullity because one of the parties was within the age of consent and consent not given, would be itself a nullity when obtained by collusion.

So the doctrine that a decree of divorce may be impeached for fraud is recognized in *Borden* v. *Fitch*, 15 Johns. 121, and in *Harding* v. *Alden*, 9 Greenl. 151, and *Kerr* v. *Kerr*, 41 N. Y. 272. The counsel for the libellee have cited the cases of *Greene* v. *Greene*, 2 Gray 361, and *Parish* v. *Parish*, 9 Ohio St. 534.

But the case of *Greene* v. *Greene* merely decides that on an original

bill filed at a subsequent term a decree of divorce will not be set aside
for fraud and false testimony, and distinctly declines to give an opinion
on the point whether such decree is open to any revisal by review, writ
of error, *certiorari*, or any other proceeding in the nature of an appeal,
the court taking the ground that such decree, when the court has ju-
risdiction, is conclusive between the parties unless revised on some
legal proceeding instituted directly for that purpose, although third
persons might be allowed to attack it collaterally.   And besides, it
would seem that *Greene* v. *Greene* has been overruled in Massachusetts
in *Edson* v. *Edson*, referred to in Bennett & Holland's Mass. Dig., vol.
3, p. 233.

The case of *Homer* v. *Fish*, 1 Pick. 435, was cited and relied upon.
In that case, a suit was brought to recover back a sum of money paid
by the plaintiff to satisfy a judgment recovered on a policy of insurance,
upon the ground that the judgment was obtained by fraud ; but the
court held that the judgment, so long as it was unreversed, was a bar to
the recovery ;—and the court cites with approval the decision of the
court in *Peck* v. *Woodbridge*, 3 Day 36, that a man cannot collaterally
impeach or call in question a judgment of a court of law or decree in
equity to which he is a party.   It can only be done directly, by writ of
error, petition for new trial, or bill in chancery.

These cases lend no aid to the position that a party to a decree of
divorce cannot, in any form, impeach it for fraud.

The Ohio case of *Parish* v. *Parish* was an original bill in equity to
set aside a decree of divorce, on the ground that it was obtained by
fraud and perjury, and alleging also that the libellant had suppressed
the paper which contained notice of the suit.

A demurrer to the bill was sustained, and the reasoning goes to the
extent of holding that the decree was absolutely conclusive, and not
subject to be impeached, even for fraud.   Some stress was placed upon
their statute, which provided that such decree should be final and con-
clusive,—the court holding it, however, to be in accordance with general
policy.   The result in this case is like that in *Greene* v. *Greene*, 2 Gray
361, but, unlike that case, it does not apparently leave open the question
whether in some form, by review or other proceeding brought directly
to reverse the decree, it ought not to be done.

To the reasoning in this case we cannot subscribe ; and we think it
is opposed both to principle and authority.   It is essential, indeed, to
the due administration of justice, that courts should have the power to
protect themselves and their suitors against fraud and imposition.

Of course this power will always be exercised with great caution, and
especially after a long lapse of time, and after changes in the *status* of
persons upon the faith of decrees in cases like this.

In the case before us, the libellee offers to prove that she had no no-
tice of the pendency of the suit, and that the libellant, knowing her res-
idence, caused the notice to be published in a newspaper that he had
every reason to believe neither she nor her friends would see, for the
purpose of concealing from her any notice of the proceedings, and that

the divorce was obtained by fraud and perjury.   Should it be made to appear that the libellant, knowing where the libellee resided, fraudulently caused the notice to be published in a paper not likely to be seen by her or her friends with the purpose of preventing the notice reaching her, and that the artifice was successful, the court ought not to hesitate to treat it as no notice at all, and no real compliance with the requisitions of the statute.   The order of notice may have been complied with, but if fraudulently procured, with the very purpose of avoiding the giving of actual notice, it ought to be regarded as what it really is, no notice at all.

Upon the other point, that the divorce was obtained by fraud and perjury, it ought also to appear that the cause of divorce alleged had in fact no existence ; but, as no definitive judgment is to be rendered, but only to determine how far testimony of this character is admissible, it is unnecessary to examine further the sufficiency of the offer.   The great question is, whether, after this lapse of time, this decree can be set aside or vacated for fraud and imposition ; and on that point we are clear that it may be if the proofs are clear.

These views must not be understood to give any countenance whatever to the idea that there may be a re-trial, merely, of a divorce suit on the allegation of fraud.   On the contrary, the proof of fraud of a grave character ought to be clear ; and the court would be slow to reverse a decree of divorce, when the libellee appeared, or had due and actual notice to appear, unless fraud of a serious character is established.

No objection is made in respect to the form of the application here, and we therefore assume that it is in writing, as it ought to be, setting forth fully the grounds of the application.          *Case discharged.*