DECEMBER 17,
1874.                    FOLSOM *v.* FOLSOM.

A retrial of a libel for divorce cannot be granted on the ground that the decree was obtained by the fraud and perjury of the libellant and his witnesses, when no fraud of the libellant is shown except by implication from the charge of perjury.

The facts are stated in the opinion of LADD, J.

*Blair,* for the plaintiff.

*Fling,* for the defendant.

LADD, J.   About October 20, 1873, William H. Folsom, this defendant, filed a libel for divorce against Sarah A. Folsom, this plaintiff, charging her with adultery, which was entered at the November term, 1873.   During said November term, Sarah A. Folsom filed a cross libel against her husband, charging him with adultery with one Mary Etta Follansby, committed at Alexandria, on or about January 15, 1873, etc., and also with extreme cruelty, specifying, December 5, 1867, the throwing of a heated pipe at her, which struck her over the right eye, and inflicted a dangerous wound, etc.   In said libel she prayed for the custody of her minor children and for alimony.   At said November term both said libels were tried upon their merits, and a decision rendered in both of them in favor of the husband,—that is, his prayer for a divorce, on the ground of her adultery, was granted; and her prayers for a divorce, for the custody of her children, and for alimony, were denied.

At the next term of the court, May, 1874, Sarah A. Folsom brought this petition, in which she sets up the same identical causes for divorce against her husband as those charged in her libel, and prays for a divorce, for custody of her minor children, and for alimony also, in the very terms employed in her libel.

So far this proceeding is nothing more than a revival of the libel, which was dismissed on its merits at the November term, 1873.   But it also contains other matter.   It sets out, substantially, the facts with

reference to the two libels and the result of the trial thereon, as given above, and then alleges certain things concerning the trial, which, it is claimed, show that the judgment then rendered ought to be set aside or declared void, and a new trial of the same matters awarded upon this petition.

The only question of law presented for our consideration is, whether these last named allegations in the petition show legal ground upon which the final decrees and judgments made upon a full hearing at the November term, 1873, can he annulled;—and I cannot for a moment doubt that they do not.    Those allegations are as follows: " That when the libel of said William H. was served upon her she was in Concord, N. H., where she was then at work for her living; that she was entirely ignorant of legal proceedings, but within a few days consulted a lawyer there,—but he was unable to attend to the case, and referred her to counsel in said Plymouth; that she was entirely destitute of money or means, and was not able to arrive at Plymouth until after the commencement of said term; that, feeling conscious of her own innocence and confident of the guilt of said Folsom, and having previously talked with witnesses who knew the facts necessary to establish the truth of the charges contained in her libel, against the advice of her counsel she insisted upon trial at said term, and notified said Folsom accordingly; that some days afterwards, and before the commencement of the trial, she was surprised to find several of the witnesses upon whom she relied, and to whom she had written to be present and testify in support of the charges contained in her libel, attending court as witnesses for said Folsom, and that they proposed to testify contrary to the facts in the case as she knew they were known to said witnesses, whereupon she at once applied for continuance of said libels, that her cause might be prepared for trial, which application was refused by the court by reason of the previous notice she had given to the other party to be ready for trial at said term; that the party with whom she was alleged to have committed adultery was then in parts unknown to her, and she was entirely destitute of means, except forty dollars allowed her by the court from her husband's estate; that she was therefore obliged to try her case in the absence of many important witnesses, and without suitable preparation of a cause which involved her good name, her children, and her means of support; that she expended the amount allowed her by the court under the direction of her counsel, who advanced about the same sum and rendered his services in addition, and that she believes there was no default on her or his part in using the means and time allowed her by the court; that her mistake in insisting upon trial at said term was occasioned by her ignorance, and her confidence in the witnesses who betrayed her, and in the justice of her cause; that the testimony of said Folsom and his chief witness, Mary Etta Follansby, on said trial, was grossly false in this, that they denied that they had committed adultery, and their testimony as well as that of many other of the witnesses of the said Folsom, was wholly untrue, and so the decree of the court aforesaid was obtained by

fraud and perjury on the part of said Folsom and several of his witnesses.

Now, all that is said here as to her ignorance of legal proceedings, her ill-advised haste in insisting on a trial at that term, and notifying her husband to that effect, her surprise and embarrassment when she afterwards found that witnesses upon whom she had relied were going to swear falsely against her, transpired, as it were, directly under the eye of the judge who tried the cause. At any rate, an application was made to him for a continuance upon this very ground, and all these considerations must have been urged upon him and weighed, in deciding against the application as he did ; and it certainly is not to be presumed here that a continuance would have been refused under such circumstances, unless the judge were reasonably satisfied that a fair trial could be had at that time, nor that a decree would have been finally entered establishing the fact of adultery by the wife, after such an application by her for delay and time to prepare for trial, had it not been morally certain that no evidence could be procured that would change the result.

But however all this may be, nothing is clearer than that we cannot go into it here. It was one of the circumstances of the trial, which, so far from affecting the judgment, would not even be revised by this court upon the exception of the petitioner. It was a matter of discretion in the conduct of the trial, which would only be considered here if specially reserved by the judge who tried the cause.

But the allegation upon which principal stress has been laid in the argument is, " that the testimony of said Folsom and his chief witness, Mary Etta Follansby, on said trial, was grossly false in this, that they denied that they had committed adultery, and their testimony, as well as that of many other of the witnesses of the said Folsom, was wholly untrue ; and so the decree of the court aforesaid was obtained by fraud and perjury on the part of said Folsom and several of his witnesses." The only specification of perjury here shown is that of the defendant and Follansby in swearing that they had not been guilty of adultery together. This was the very fact charged in Mrs. Folsom's libel, and one entirely decisive of the libel of her husband. Neither she nor her counsel could reasonably expect anything different with respect to the testimony of the parties thus implicated. The very fact that a contest was to be made, implied, necessarily, that the adultery charged by her was denied.

If any fraud in obtaining the alleged wrongful judgment is charged in the petition, it is only by implication and inference, as included in the charge that the defendant and his witnesses swore falsely. Who told the truth, and who did not, at the trial, may have been a troublesome question for the judge to decide. It was one, nevertheless, which he could not avoid ; and when he decided, as he did, that the defendant had not been guilty of adultery, he decided that he and his witness, Follansby, did not commit the perjury charged upon them in this petition. With that decision also must go all pretence of fraud charged

upon the defendant in the petition ; for, as already remarked, there is no suggestion of fraud, except such as arises out of his perjury.

What reason can be given for sending this question of the credibility of witnesses back to be tried over again by another judge ? The plaintiff now says that the witnesses swore falsely ; the defendant says they did not. But this is exactly what they said at the trial, and exactly what they would say again were there to be another trial. Suppose, at the next trial, another judge should agree with the plaintiff, and find that she instead of the defendant tells the truth : why could not the defendant then apply to this court to vacate the second decree, alleging the perjury and fraud of the plaintiff and her witnesses ? And why could not such claim by him be pressed with still greater force as well as reason, from the fact that *he* would then have a judgment of the court in his favor, as well as the plaintiff ? There is no case in this state, and none anywhere else, to my knowledge, that gives the least countenance to such a practice. *Adams* v. *Adams*, 51 N. H. 388, upon which the plaintiff seems to rely with some confidence, so far from encouraging such an idea, was, as I well know, carefully and intentionally guarded in that direction by expressions which were supposed to be sufficient to prevent any misconstruction or misapprehension of the case as an authority. See pp. 397, 400, of the opinion by Bellows, C. J.

If a retrial of a divorce case could be had in this state, upon the allegations of this petition, it would follow that the number of trials in such cases would only be limited by the caprice of the parties, the bitterness of their quarrel, or the length of their purses. For, if this petition be candidly looked at, it really contains nothing but a string of complaints with respect to the conduct of the judge, the opposite party and his witnesses, such as probably a majority of unsuccessful suitors, while smarting under their defeat, would readily enough put in the form of a petition for a new trial were such a course to find encouragement by the court.

As to revising or modifying the order with respect to alimony made when the case was decided, I do not understand that any question is before us on the present case. Section 15 of chapter 163, Gen. Stats., doubtless confers the right to apply to the court for a revision and modification of such orders ; and when such application is made in proper form, it is, of course, the duty of the court to hear it. *Sheafe* v. *Sheafe*, 24 N. H. 564 ; *Sheafe* v. *Laighton*, 36 N. H. 240.

The present petition asks, among other things, that the orders and decrees made in the libel and cross libel may be revised and modified ; and although the main thing sought,—that is, a rehearing of the two libels,—must be denied, I am inclined to think the petition may be regarded as a sufficient application for a revision of the order as to alimony under the statute, and that the plaintiff should he heard thereon before the circuit court, if she desires.

Smith, J.   Upon the principles laid down in the authorities, this application must be denied. *Adams* v. *Adams*, 51 N. H. 397 ; *Greene* v.

*Greene,* 2 Gray 361; *Edson* v. *Edson,* 108 Mass. 598. In *Greene* v. *Greene* it was decided that a decree of divorce cannot be called in question or invalidated, on the ground of fraud in its procurement, in a separate and independent libel subsequently brought between the same parties, when it appears that the first decree was entered after due notice to the adverse party, followed by an adjudication upon evidence offered in support of the allegations in the libel.

In *Edson* v. *Edson* the decree of divorce was set aside; but it was upon the petition of the libellee, who had no notice of the pendency of the libel and no opportunity to be heard, but of which all knowledge was fraudulently kept from her, and of which the court had no actual jurisdiction, but only an apparent jurisdiction founded on a false allegation of domicile.

In *Adams* v. *Adams,* it was laid down that a judgment will not be avoided for fraud when the same question of fraud was tried in the original action; and in *Tebbetts* v. *Tilton,* 31 N. H. 287, it was held that fraud in a judgment might be shown by a party or a privy where it may be done without showing any participation in the fraud, and where it does not involve a reëxamination of the merits of the case.

The fraud imputed to William H. Folsom is, that his testimony and that of his chief witness Follansby, his alleged paramour, on the former trial, " was grossly false in this, that they denied that they had committed adultery, and their testimony as well as that of many other of the witnesses of said Folsom was wholly untrue, and so the decree of the court aforesaid was obtained by fraud and perjury on the part of said Folsom and several of his witnesses." The gist of the complaint appears to be, that the parties charged with having committed adultery did not admit it. That Folsom answered to and opposed her former libel was notice to her that he denied the truth of the charge of adultery against him. She therefore had no reason to be surprised at his testimony. The question of perjury, whether he and his witnesses were testifying falsely, was one of the questions for the judge who tried the cause to pass upon, and, as his decision was against this libellant, he must have found that they did not commit perjury, and therefore the alleged fraud was not committed.

The libellant now asks for a new trial, upon the ground that she has discovered further testimony. But this would only be adding cumulative testimony upon the same issues tried before, and there is no rule of law that allows a new trial in a libel for divorce for this reason. The libellant was duly notified of the former trial, was present in person, and with able counsel and with witnesses, and the cause seems to have been fully tried upon its merits. To grant a new trial upon the ground of newly discovered evidence would introduce a practice that would result in reopening a large proportion of decrees for divorce, and also result in great confusion and uncertainty in the *status* of the parties and their children.

Upon the former trial both libels were heard together. Each party charged the other with having committed the crime of adultery. The

finding of the court necessarily established the guilt of the wife upon this charge and the innocence of the husband. In the libel now pending, she does not charge her husband with fraud or perjury, or subornation of perjury, in the trial of his libel against her, but of her libel against him. So, if she should succeed upon a new hearing in proving her husband guilty of adultery, and if the evidence, as it did upon the former trial, should prove her guilty of the same charge, no divorce could be decreed to her; and, however strong a case she may make for a new hearing of her libel against him, there is nothing stated in the present libel that entitles her to a new hearing upon his libel against her.

Upon the questions of custody and alimony, a new hearing can be had in the court below if the petitioner desires it.

CUSHING, C. J.  The petitioner, having been by a decree of this court divorced from her husband on his petition, and a divorce on her petition being at the same time denied, now petitions for a rehearing of those causes, and at the same time and in the same petition asks for a modification of the order in regard to custody of children and alimony made at the time of her divorce.

The defendant appears, and moves to dismiss the petition; and the simple question for the court is, whether there is enough alleged in the petition on which to found a decree, supposing it all to be admitted to be true.

In regard to the petition for further orders in the former divorce suit, there seems to be no doubt that this matter is within the jurisdiction of the court, and that new and further orders may be made at the discretion of the court.

As to the matter of the rehearing, the case of *Adams* v. *Adams*, 51 N. H. 388, which was decided with great apparent care and deliberation, is the leading and sufficient authority.

The petition in that case alleged a fraudulent collusion, by which a service apparently sufficient in law was obtained without in fact coming at all to the knowledge of the libellee; and it was held that such fraud was sufficient ground for opening the matter, and for a rehearing. But the learned judge who delivered the opinion of the court was careful to say that it was not intended " to give any countenance whatever to the idea that there may be a retrial, merely, of a divorce suit, on the allegation of fraud." In the petition before us, the only fraud alleged is the perjury of witnesses at the trial; so that what is proposed appears to be merely a retrial of the case, and is precisely what, according to the case of *Adams* v. *Adams*, cannot be had.

It is true, the petition alleges that the petitioner was forced to trial under circumstances of hardship, her reasonable request for a continuance being denied. But there is no allegation that this denial was obtained by any fraud practised upon the court; so that, for ought that appears, the continuance was denied by the court in the reasonable and proper exercise of its discretion, and is a matter which cannot be inquired into here.

The result is, that so much of the petition as claims a rehearing of the divorce cases must be dismissed. The petition may be amended by striking out all except what relates to a modification of the orders made in the former suit. On that part of the petition a hearing may be had, and such orders made as may be necessary and proper.

*Petition dismissed as to so much as prays for a retrial of the former divorce suits.*